The STATE of Utah, Plaintiff and Respondent,

v.

Jesus Neal LOPEZ, Defendant and Appellant.

No. 18525.

Supreme Court of Utah.

Jan. 12, 1984.

Edward K. Brass, Robert Van Sciver, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

OAKS, Justice:

This is a case of first impression on what "circumstances make it reasonable" to issue a search warrant by telephone under U.C.A., 1953, § 77–23–4(2), adopted in 1980

as part of our new Code of Criminal Procedure. After denial of his motion to suppress, defendant was tried on stipulated facts and convicted of possession of a controlled substance with intent to distribute for value. § 58–37–8(1)(a). The court issued a certificate of probable cause. We affirm.

The certified transcript of Officer Russell's telephone conversation with Circuit Judge Bean shows that both the officer and the judge carefully followed the procedure specified in the statute, including the officer's giving of sworn testimony, his verbatim reading of the contents of the proposed warrant, the judge's direction that the officer sign the judge's name and his own name thereto, and the judge's later signing and filing of the written transcript, which was also signed by the officer. There was ample showing of probable cause, and the warrant is appropriately specific on the location to be searched and the evidence sought.

No constitutional issue has been raised. The sole question on this appeal is whether § 77–23–4(2) authorized a search warrant to be issued by telephone in the circumstances of this case.

The transcript of Officer Russell's sworn testimony shows that he and two other narcotics officers suspected that marijuana was being sold at a residence on 1150 South about 200 yards east of Main Street in Clearfield, Davis County. At 3:00 p.m. on July 8, 1981, a female informant entered the house. She returned fifteen minutes later and advised Officer Russell and his partner (whom she did not know to be officers) that there were narcotics in the house, and they could buy what they wanted. The officers gave her $150 in marked bills, and she went back into the house. When she returned at about 4:00 p.m., she had three ounces of a substance that Officer Russell, an experienced narcotics officer, identified as marijuana. The informant told the officers that "she was sorry she took so long but they had to cut the marijuana we borrowed [bought?] out of the loose stash that they had in the house."

The officers left the informant at approximately 4:15 p.m. A third officer remained outside the house as a lookout.

No testimony was given at the hearing on the motion to suppress. The only evidence was the certified transcript of the telephone call, the signed warrant, and the return. There is no evidence on the whereabouts or activities of the officers from 4:15 until 5:40 p.m., when Officer Russell telephoned Judge Bean. Officer Russell stated that he was calling from the county attorney's office in the courthouse in Farmington, but the record is silent on the whereabouts of Judge Bean at that time. We take judicial notice or have judicial knowledge of the facts that Judge Bean's courtroom and office are in Layton, that the distance from Clearfield to Farmington is about eleven miles, that Layton is situated between those two cities (somewhat closer to Clearfield), that all three cities are in Davis County, that the courtrooms and offices of the district court are in the courthouse at Farmington, and that there are courtrooms and offices of the circuit court in Clearfield and Layton. *State v. Lawrence*, 120 Utah 323, 327, 234 P.2d 600, 602 (1951); Utah Rules of Evidence 201; 5 Am. Jur.2d *Appeal and Error* §§ 739–40 (1962); 29 Am.Jur.2d *Evidence* §§ 52, 64–65, 69 (1967). The record contains no evidence on whether there were other judges available at any of these locations between 4:15 and 5:40 p.m. that afternoon.

The State points to the following portion of the transcript as evidence of "circumstances [that] make it reasonable" to seek a search warrant by telephone:

Judge: Alright, let me ask this. Will you give me the reasons why you feel that a search warrant cannot be procured by coming before a magistrate. Why your reason is for asking for a telephonic authorization?

Officer: Currently we have nobody available at this time that we know of who can actually use a typewriter to physically type the warrant. Also we have an officer on the residence that is setting out, securing the residence more

or less, watching if there is any traffic in and out so that the evidence doesn't escape us.

In his helpful memorandum opinion on denial of the motion to suppress, the district court rejected the absence of a typist as a basis for telephonic authorization, but relied on the factor of time:

Time was of the essence in getting back to that house before the remaining drugs left the house. . . . [I]t is speculation to think of all the circumstances that might have occurred to cause the evidence and contraband to be lost if the county attorney had only to delay one hour to get a typist and then get the written documents to Layton to get them signed.

The court held that "[i]n this case the facts justified the use of the telephonic warrant" and denied the motion to suppress.

Section 77–23–4 is set out in full in the Appendix. Its key language for present purposes is as follows:

(2) *When the circumstances make it reasonable to do so in the absence of an affidavit,* a search warrant may be issued upon sworn oral testimony of a person who is not in the physical presence of the magistrate provided the magistrate is satisfied that probable cause exists for the issuance of the warrant.

(Emphasis added.)

Defendant argues that the underscored language connotes emergency circumstances, so a telephonic warrant cannot issue unless the State can prove an excuse for not appearing in person before the magistrate. The State maintains that time was of the essence in this case, which constitutes a circumstance that justifies the use of the telephonic warrant under such precedents as *State v. Cymerman,* 135 N.J.Super. 591, 601, 343 A.2d 825, 830 (1975), where the court held:

The failure in this case to draw up and execute a search warrant in writing is justified by the belief of the police that the time for action was short and any delay might well result in the removal or destruction of the evidence sought.

As suggested by this quote, other states have statutes authorizing the issuance of warrants by telephone. *See State v. Hadd,* 127 Ariz. 270, 619 P.2d 1047 (1980); *People v. Peck,* 38 Cal.App.3d 993, 113 Cal.Rptr. 806 (1974). However, we have been cited to no other statutes whose terms are similar to our statute. We have no direct precedents to assist us in construing § 77–23–4(2).

At the outset, it is clear that no emergency circumstance or other special justification needs to be shown to obtain a search warrant without a written affidavit. Section 77–23–4(1) provides that the evidence for the issuance of a warrant must be "given on oath and *either* reduced to writing *or recorded verbatim.*" (Emphasis added.) This provision of our new Code of Criminal Procedure entirely displaced the earlier prohibition against the issuance of a warrant on the basis of an "oral deposition." *State v. Jasso,* 21 Utah 2d 24, 25, 439 P.2d 844, 845 (1968). Even as to pre-Code cases, *Jasso* was partially overruled in *State v. Romero,* Utah, 660 P.2d 715 (1983) (oral testimony promptly transcribed and available for defendant's challenge to probable cause). Similarly, it is well settled that unless a statute or rule of criminal procedure requires otherwise a finding of probable cause for a search warrant can be based wholly or partially on sworn oral testimony heard by the magistrate and not embodied in a written affidavit. *E.g., City of Chicago v. Adams,* 67 Ill.2d 429, 10 Ill.Dec. 533, 367 N.E.2d 1299 (1977); *People v. Schnitzler,* 18 N.Y.2d 457, 276 N.Y. S.2d 616, 223 N.E.2d 28 (1966); *State v. Walcott,* 72 Wash.2d 959, 435 P.2d 994 (1967), *cert. denied,* 393 U.S. 890, 89 S.Ct. 211, 21 L.Ed.2d 169 (1968); *United States v. Hill,* 500 F.2d 315 (5th Cir.1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1135, 43 L.Ed.2d 404 (1975); *Boyer v. Arizona,* 455 F.2d 804 (9th Cir.1972); *Leeper v. United States,* 446 F.2d 281 (10th Cir.1971), *cert. denied,* 404 U.S. 1021, 92 S.Ct. 695, 30 L.Ed.2d 671 (1972).

Because statements "given on oath" stand on the same footing under § 77–23–4(1) whether reduced to writing or recorded

verbatim, the only question to be resolved under § 77–23–4(2) is what "circumstances make it reasonable" to authorize sworn oral testimony given by telephone.

The first paragraph of § 77–23–4(2), which specifies that "sworn oral testimony may be communicated to the magistrate by telephone or other appropriate means," provides that such testimony shall be "recorded and transcribed" and that the transcribed statement "shall be certified by the magistrate and filed with the court." The paragraph then concludes with this sentence: "This statement shall be deemed to be an affidavit for purposes of this section." In this context—in which subsection (1) authorizes sworn oral testimony as a basis for a warrant and subsection (2) provides that the certified transcript of that testimony "shall be deemed to be an affidavit"—the meaning of the first sentence of subsection (2) is clear.

■ Section 77–23–4(2)'s reference to "circumstances [that] make it reasonable to do so in the absence of an affidavit" refers to compliance with the requirements detailed in subsection (2). This means (a) testimony recorded and transcribed, (b) warrant read verbatim to the magistrate, (c) transcript certified by the magistrate and filed with the court, and (d) copy signed by the witness. These statutory requirements are directly addressed to the special circumstances of "sworn oral testimony of a person who is not in the physical presence of the magistrate...." The statute specifies no other criteria to which its reference to "circumstances [that] make it reasonable" could refer. Consequently, we conclude that "circumstances make it reasonable" to obtain a warrant "upon sworn oral testimony of a person who is not in the physical presence of the magistrate" whenever there has been specific compliance with the requirements of § 77–23–4(2). No emergency or other special circumstances need be proved.

■ As so construed, this statute should not lend itself to abuses by law enforcement officials. If abuses do occur, they will be corrected as they are identified.

The prosecution has the burden of proving to the magistrate that it has complied with all of the requirements of the statute up to the point that the magistrate authorizes the issuance of the warrant. Compliance with the rest of the requirements will be examined by judicial authority at the time of the motion to suppress. The prosecution will have the burden of proving the rest of the requirements pertaining to the issuance of the warrant by telephone (including transcription, signing, and filing). As to other matters, the burden of proof and persuasion will continue to be upon the party making the motion to suppress. *State v. Cole*, Utah, 674 P.2d 119 at 126 (1983); *Johnson v. State*, Alaska, 617 P.2d 1117, 1125 (1980); *State v. Tidyman*, 54 Or.App. 640, 635 P.2d 1355, 1358 (1981).

We see no danger that telephonic warrants will become routine and replace the traditional practice of obtaining warrants by personal appearance accompanied by a written affidavit. In this case, the record shows that it took 24 minutes to obtain this warrant by telephone in compliance with all of the statutory formalities. Magistrates will not issue warrants by this means if personal appearance and written affidavit will accomplish the same purpose and use less judicial time. Busy prosecutors and law enforcement personnel will not seek warrants by telephone unless there are good reasons to do so, since the added formalities, including recording and transcription, will require added time and impose added risk of technical deficiencies.

For the reasons described above, we anticipate that the relationship between telephone and other warrants will be self-enforcing. In contrast, if we were to read into § 77–23–4(2) some criteria of "reasonableness," such as the "emergency" circumstances advocated by defendant, we would create additional technicalities for litigation on a case-by-case basis without benefit to the defendant and at a considerable cost to law enforcement and judicial administration. If the circumstances are such that the sworn witness should appear and give testimony in person, the magistrate can

order that to be done, just as can now be done when a warrant is sought on the basis of a written affidavit of a person not present before the magistrate.

We note in passing that the testimony of a witness over the phone can provide the magistrate a better feeling for the evidentiary basis for probable cause (because of the opportunity for questions and interchange) than the commonly used written affidavit of a person not present before the magistrate at the time the warrant is sought. In any event, the facts of this case provide a far more credible basis than the telephoned double hearsay we approved as a basis for a probable cause determination in *State v. Treadway*, 28 Utah 2d 160, 499 P.2d 846 (1972) (citizen saw what he thought was marijuana in motel room in Wendover and told first officer, who, along with citizen, phoned second officer in distant town, who executed affidavit and obtained search warrant in personal appearance before magistrate).

■ As has often been said, the key elements in the obtaining of a search warrant are sworn testimony and a decision on the sufficiency of "probable cause" by a neutral and detached magistrate. *See State v. Lee*, Utah, 633 P.2d 48, 61, *cert. denied*, 454 U.S. 1057, 102 S.Ct. 606, 70 L.Ed.2d 595 (1981); *Johnson v. United States*, 333 U.S. 10, 13–14, 68 S.Ct. 367, 368–369, 92 L.Ed. 436 (1948). Those requirements are fully implemented by our statutory procedure for telephonic warrants. Likewise assured is the defendant's ability to challenge the merits of the magistrate's determination or any irregularities in the procedure. If a defendant provides evidence that the prosecution has abused this procedure in a particular case and if the defendant has been actually prejudiced in respect to a substantial right, *State v. Romero*, 660 P.2d at 721, the court will take appropriate action.

■ Since the statutory procedures were followed and there is no evidence of abuse or misconduct in this case, the court properly denied the motion to suppress. The judgment of conviction is affirmed.

HALL, C.J., and STEWART and DURHAM, JJ., concur.

HOWE, J., concurs in the result.

## APPENDIX

### Utah Code Annotated, 1953

§ 77–23–4. Examination of complainant and witnesses—Witness not in physical presence of magistrate—Duplicate original warrants—Return. (1) All evidence to be considered by a magistrate in the issuance of a search warrant shall be given on oath and either reduced to writing or recorded verbatim. Transcription of the recorded testimony need not precede the issuance of the warrant. Any person having standing to contest the search may request and shall be provided with a transcription of the recorded testimony in support of the application for the warrant.

(2) When the circumstances make it reasonable to do so in the absence of an affidavit, a search warrant may be issued upon sworn oral testimony of a person who is not in the physical presence of the magistrate provided the magistrate is satisfied that probable cause exists for the issuance of the warrant. The sworn oral testimony may be communicated to the magistrate by telephone or other appropriate means and shall be recorded and transcribed. After transcription, the statement shall be certified by the magistrate and filed with the court. This statement shall be deemed to be an affidavit for purposes of this section.

(a) The grounds for issuance and contents of the warrant issued pursuant to subsection (2) shall be those required by this chapter. Prior to issuance of the warrant, the magistrate shall require the law enforcement officer or the prosecuting attorney who is requesting the warrant to read to him verbatim the contents of the warrant. The magistrate may direct that specific modifications be made in the warrant. Upon approval, the mag-

istrate shall direct the law enforcement officer or the prosecuting attorney for the government who is requesting the warrant to sign the magistrate's name on the warrant. This warrant shall be called a duplicate original warrant and shall be deemed a warrant for purposes of this chapter. In such cases the magistrate shall cause to be made an original warrant. The magistrate shall enter the exact time of issuance of the duplicate original warrant on the face of the original warrant.

(b) Return of a duplicate original warrant and the original warrant shall be in conformity with this chapter. Upon return, the magistrate shall require the person who gave the sworn oral testimony establishing the grounds for issuance of the warrant to sign a copy of the transcript.

(3) If probable cause is shown, the magistrate shall issue a search warrant.